UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROOSEVELT PERRY, | ) | Case No. 4:09CV0496 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | JUDGE KATHLEEN O'MALLEY |
| | ) | (Magistrate Judge McHargh) |
| KEITH SMITH, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The petitioner Roosevelt Perry ("Perry") has filed a petition pro se for a writ of habeas corpus, arising out of his 2002 convictions for several counts of robbery, in the Trumbull County (Ohio) Court of Common Pleas. In his petition, Perry raises two grounds for relief:

> 1. The imposition of non-minimum, maximum or consecutive prison terms for multiple felony convictions contravenes the Sixth Amendment to the United States Constitution. Blakely v. Washington (2004), 542 U.S. 296; U.S. v. Booker (2005), 543 U.S. 220.
>
> 2. The remedy that this court [sic] set forth in State v. Foster (2006), 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

(Doc. 1, at § 12.)

I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural background:

> The testimony at trial was that on the morning of June 10, 2001, at approximately 6:20 a.m., Jennifer Samble ("Samble") was working at the Save-a-Step convenience store in Hubbard Township, Ohio, when she noticed a tall, black male enter the store.  After asking another person in the store for directions, the man began selecting items from the shelves and bringing them to the counter one item at a time.  Because of the man's strange behavior, Samble pushed the store's panic button.  Eventually, the man approached the counter a final time and told Samble "that this [was] a robbery." He then placed his hand in his pocket, warned Samble that he had a gun, and threatened to kill her if she did not give him the money.
>
> Instead of complying with the man's request, Samble stepped away from the counter and announced to the other people in the store that the man was "trying to rob [her]!" The man backed away from Samble and grabbed a five-dollar bill from Debra Grilli ("Grilli"), who was in line to pay for a cup of coffee.  When the man demanded more money from Grilli, she claimed that she did not have any more money with her.  The man then turned to another customer, George Roth ("Roth"), spun him around, removed Roth's wallet from his back pocket, and exited the store.  Once outside, the man entered a "white Honda Civic looking car" and drove out of the parking lot.
>
> Hubbard Township police officers arrived at the store a short time later and interviewed the witnesses and collected evidence.  From their investigation, they determined that appellant was a possible suspect.  Accordingly, they showed a photo array, which included a picture of appellant and five other black males, to Samble, Grilli, and Roth, each of whom separately identified appellant as the perpetrator.
>
> On September 19, 2001, the Trumbull County Grand Jury indicted appellant on the following charges: one count of robbery, in violation of R.C. 2911.02(A)(2) and (B); two counts of robbery, in violation of R.C. 2911.02(A)(3) and (B); and one count of theft from an elderly person, in violation of R.C. 2913.02(A)(1) and (B)(3).  Appellant subsequently filed a motion to suppress, in which he asked the trial court to exclude any pretrial identifications of appellant, as well as any future in-court

2

> identifications. The trial court held a suppression hearing, and after considering the evidence, overruled appellant's motion.
>
> The matter proceeded to jury trial beginning on February 5, 2002. At the conclusion of the trial, the jury considered the evidence and found appellant guilty of all four charges. The trial court accepted the jury's verdicts and then sentenced appellant to an eight-year prison term on count one, which was to be served consecutive to the concurrent five-year terms of incarceration imposed by the court for counts two and three. In addition, the trial court merged count four with count three for an aggregate sentence of thirteen years.

(Doc. 12, RX 14, at 2-3; State v. Perry, No. 2002-T-0035, 2003 WL 23096545, at *1 (Ohio Ct. App. Dec. 31, 2003).)

### A. Direct Appeal

Perry filed a timely appeal of his conviction on March 22, 2002, raising the following assignments of error:

> 1. The trial court erred and abused its discretion by failing to grant appellant's motion to suppress.
>
> 2. The appellant's conviction for theft of an elderly person is not supported by sufficient evidence.
>
> 3. The appellant's convictions are against the manifest weight of the evidence.
>
> 4. The trial court erred by imposing consecutive sentences upon appellant.

(Doc. 12, RX 11.)

The court of appeals found that the second and fourth assignments of error had merit, reversed the judgment in part, vacated the sentence, and remanded for resentencing. (Doc. 12, RX 14, at 12; Perry, 2003 WL 23096545, at *6.)

3

Perry filed a timely appeal to the Supreme Court of Ohio, setting forth the following proposition of law:

> An identification made from a photographic array violates a criminal defendant's constitutional rights to due process where all three witnesses to a crime who subsequently identify a criminal defendant from the array testify that none of the other five individuals depicted in the array have a skin color similar to that of the defendant.

(Doc. 12, RX 16.) On Apr. 28, 2004, the state supreme court denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question. (Doc. 12, RX 18; State v. Perry, 102 Ohio St.3d 1422, 807 N.E.2d 367 (2004).)

### B. Post-Conviction Petition

While Perry's direct appeal was pending, he filed a pro se petition to vacate or set aside his sentence in the trial court, arguing that his counsel was ineffective, the prosecutor engaged in misconduct, and the jury was biased. (Doc. 12, RX 19.) The state moved to dismiss the petition as untimely (doc. 12, RX 20), and the court denied the petition on that basis (doc. 12, RX 21).

On March 18, 2003, Perry appealed that decision to the court of appeals. (Doc. 12, RX 22-23.) The court of appeals affirmed the judgment of the trial court on June 28, 2004. (Doc. 12, RX 25; State v. Perry, No. 2003-T-0048, 2004 WL 1433644 (Ohio Ct. App. June 28, 2004).)

C. Resentencing

The trial court resentenced Perry on Aug. 2, 2004, to eight years on Count 1 and five years on Count 2, to run consecutively, with a concurrent five year sentence on Count 3, for an aggregate sentence of thirteen years. (Doc. 12, RX 26.)

Later that month, Perry appealed his sentence, raising the following assignment of error:

> The trial court's imposition of consecutive sentences upon appellant based upon finding not made by a jury nor admitted by appellant is contrary to law and violates appellant's right to due process, as guaranteed by the Fourteenth Amendment to the United States Constitution.

(Doc. 12, RX 28.) The court of appeals affirmed the judgment of the trial court on Sept. 6, 2005, finding that the sentences did not violate Blakely. (Doc. 12, RX 31; State v. Perry, No. 2004-T-0113, 2005 WL 2133706 (Ohio Ct. App. Sept. 6, 2005).)

On Oct. 20, Perry appealed this determination to the Supreme Court of Ohio. (Doc. 12, RX 32-33.) The case was held for the court's decision(s) in State v. Quinones and State v. Foster. (Doc. 12, RX 35; State v. Perry, 108 Ohio St.3d 1435, 842 N.E.2d 61 (2006).)

On May 3, 2006, the Supreme Court of Ohio remanded to the trial court for resentencing consistent with its decision in State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006). (Doc. 12, RX 36; In re Ohio Criminal Sentencing Statutes Cases, 109 Ohio St.3d 313, 320, 847 N.E.2d 1174, 1179 (2006).)

5

### D. Second Resentencing

The trial court resentenced Perry once again, imposing an identical sentence on May 26, 2006. (Doc. 12, RX 37.) Perry appealed on June 26, challenging the legality of his sentence on the ground that the Foster decision "violates the ex Post Facto and Due Process Clause of the Ohio and United States Constitutions." (Doc. 12, RX 39, at 14.)

The court of appeals rejected his claim, affirming the judgment of the trial court, on Apr. 30, 2007. (Doc. 12, RX 43; State v. Perry, No. 2006-T-0078, 2007 WL 1241344 (Ohio Ct. App. Apr. 30, 2007).)

On June 14, 2007, Perry appealed this decision to the Supreme Court of Ohio, setting forth the following propositions of law:

> 1. The imposition of non-minimum, maximum or consecutive prison terms for multiple felony convictions contravenes the Sixth Amendment to the United States Constitution. Blakely v. Washington (2004), 542 U.S. 296; ; U.S. v. Booker (2005), 543 U.S. 220.
>
> 2. The remedy that this court set forth in State v. Foster, 109 Ohio St. 3d 1, 2006-Ohio-856, violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

(Doc. 12, RX 45.) On Oct. 3, 2007, the state supreme court denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question. (Doc. 12, RX 47; State v. Perry, 115 Ohio St.3d 1422, 874 N.E.2d 538 (2007).)

6

The United States Supreme Court denied Perry's petition for a writ of certiorari on March 3, 2008. (Doc. 12, RX 48; Perry v. Ohio, 552 U.S. 1248 (2008).) Perry next filed a timely petition for a writ of habeas corpus. (Doc. 1.)

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Perry has filed his petition pro se. The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)). Other than that, no special treatment is afforded litigants who decide to proceed pro se. McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

### III. SIXTH AMENDMENT VIOLATION

The first ground of the petition is:

The imposition of non-minimum, maximum or consecutive prison terms for multiple felony convictions contravenes the Sixth Amendment to the United States Constitution. Blakely v. Washington (2004), 542 U.S. 296; U.S. v. Booker (2005), 543 U.S. 220.

8

(Doc. 1, § 12.)  In support, Perry argues:

> The trial court stated findings regarding the seriousness of the Offenses that were committed by the Defendant, findings that should have been left to a jury when said findings increased the statutorily maximum prison term available to the Defendant when he has not agreed, or admitted, to those findings and said finding were not included within the Indictment, and were not proven to a jury beyond a reasonable doubt.  The Trial Court considered statutory judicial fact finding that increased the Defendant's sentence beyond that authorized by Law.  Specifically, the Trial Court made judicial fact finding held within, and required by [Ohio Rev. Code § ] 2929.14 (B), (C), and (E)(4) to support the imposition of nonminimum, maximum, and consecutive prison terms contravening the defendant's sixth Amendment right to a jury determining said findings that increase a sentence.  When the Ohio Supreme Court made these findings and reversed the Defendant's case for resentencing the Trial Court again issued the same sentence.

(Doc. 1, § 12.)

The respondent argues that the first ground was procedurally defaulted, or alternatively, lacking in merit.  (Doc. 12, at 7.)

The respondent points out the Perry's argument above (concerning "findings") was presented to the Ohio Supreme Court (doc. 12, RX 45, at 4-5), but was not presented to the Ohio Court of Appeals.  See doc. 12, RX 39.  See generally Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998) (exhaustion requires that claim be presented to state courts under same theory which is later presented in federal court).

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244

F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)). To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)). A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules. Coleman, 501 U.S. at 731-732; Buell, 274 F.3d at 349. Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim. Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing Buell, 274 F.3d at 349).

The court considers four factors to determine whether a claim has been procedurally defaulted: (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the

10

procedural rule, and that he was actually prejudiced by the alleged constitutional error.  Buell, 274 F.3d at 348 (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).

Perry did not raise the claim in the first ground of his habeas petition before the Ohio Court of Appeals, although he later attempted to raise it in his memorandum in support of jurisdiction filed in the Supreme Court of Ohio.  Because the claim was not raised, it is barred by the Ohio rule of res judicata.  Lott v. Coyle, 261 F.3d 594, 611-612 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002); Rust, 17 F.3d at 160-161; State v. Szefcyk, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); State v. Perry, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9).  Res judicata would bar Perry from litigating an issue that could have been raised on direct appeal.  Perry, 10 Ohio St.2d at 180, 226 N.E.2d at 108.

Although Perry attempted to raise the claim in his appeal to the Supreme Court of Ohio, that court does not consider a constitutional question which was not raised and argued in the lower courts.  Leroy v. Marshall, 757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); Adams, 484 F.Supp.2d at 769; City of Wooster v. Graines, 52 Ohio St.3d 180, 185, 556 N.E.2d 1163, 1168 (1990) (citing cases); State v. Phillips, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971).  Perry can no longer raise this claim in state court, as it would be barred on the basis of res judicata.  Leroy, 757 F.2d at 99.

The Ohio rule of res judicata satisfies the first three factors in Maupin.  Jacobs, 265 F.3d at 417.  The fourth factor is that the petitioner must demonstrate

11

that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's procedural rule. Coleman, 501 U.S. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

Perry does not argue cause. See generally doc. 15. Because Perry has not shown cause, it is unnecessary to consider the issue of prejudice. Murray, 477 U.S. at 494; Shabazz v. Ohio, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998) (TABLE, text in WESTLAW).

As to the merits, the respondent points out that there is no evidence that the sentencing judge made any factual findings at all. (Doc. 12, at 10.)

The Ohio Supreme Court in Foster noted that two sections of the Ohio Revised Code, Sections 2929.11 and 2929.12, "apply as a general judicial guide for every sentencing." Foster, 109 Ohio St.3d at 12, 845 N.E.2d at 484. However, the court pointed out: "It is important to note that there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." Id. at 14, 845 N.E.2d at 485. The sentencing judge here did no more:

> The Court has considered the record, oral statements, and any victim impact statement, as well as the principles and purposes of sentencing under O.R.C. Section 2929.11, and has balanced the seriousness and recidivism factors of O.R.C. Section 2929.12.

(Doc. 12, RX 37, at 2-3; see also doc. 12, RX 54, at 8.)

The petition should not be granted on the basis of the first ground because it has been procedurally defaulted.

IV. EX POST FACTO

The second ground of the petition contends that the remedy set forth in State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), violates the Ex Post Facto and Due Process Clauses of the United States Constitution. In support, Perry argues that Foster:

> . . . severed various statutes from the Ohio Revised Code finding said statutes to be unconstitutional under Blakely v. Washington, supra, in violation of a defendant's Sixth Amendment rights. After Petitioner was resentenced under the severed statutes and after [Foster's] remedy of severance, the Petitioner was given the same sentence, even though he was not subject (allegedly) to fact findings through Judicial sentencing.
>
> Petitioner did not have notice that the statutory maximum would change after Foster when Foster removed the protections of [Ohio Rev. Code §] 2929.14(B)(E) etc. when those statutes were severed, thus the statutory maximum changed because Judges throughout Ohio could effectively sentence a defendant to any of the statutory ranges including the maximum, when the Defendant's maximum was previously outlined in pre-Foster in [Ohio Rev. Code §] 2929.14(B)(E).

(Doc. 1, § 12.) The respondent asserts that the second ground is without merit. (Doc. 12, at 11-19.)

After his resentencing, Perry pressed a similar claim before the state court of appeals. The court rejected his claim, in part because he "did not raise any constitutional objections to his sentence at the trial court level," and thus the claim was waived for appellate review. (Doc. 12, RX 43, at 4; Perry, 2007 WL 1241344, at

13

*2 .) However, the court also noted that "appellant's due process and ex post facto claims have recently been addressed by this court in State v. Elswick, 11th Dist. No.2006-L-075, 2006-Ohio-7011. Based on our decision in Elswick, those issues are without merit." Id.

> This court has addressed the Elswick decision in another habeas case:
>
> In Elswick, the same court of appeals identified the correct Supreme Court precedent with respect to ex post facto laws and held that the decision of the Supreme Court of Ohio in Foster did not violate the Ex Post Facto or Due Process Clauses because, prior to Foster, "individuals who decided to commit crimes were aware of what the potential sentences could be for the offenses committed." Elswick, No.2006-L-075, 2006 WL 3833868, ¶ 23 (Ohio Ct.App. Dec. 29, 2006) (citing O.R.C. § 2929.14(A)). Further, there "was no legislative alteration of Ohio's sentencing code post Foster [and the defendant in Elswick, just like Semala,] was sentenced after Foster.... was decided [in February 2006]." Id. ¶ 24. The court concluded that it could not hold "that Foster violates federal notions of due process as established in Bouie v. Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) .... [because the defendant] knew the potential statutory sentence, had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and was unlikely to amend his criminal behavior in light of a sentencing change." Id . ¶ 25.
>
> The Elswick court also noted that "[O.]R.C. 2929.11 and [O.] R.C. 2929.12, two key statutory provisions of Ohio's sentencing scheme, survive after Foster. Even though trial courts are no longer required to make specific findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences on the record, [O.]R.C. 2929.11 and [O.] R.C. 2929.12 must still be considered when sentencing offenders." Id. ¶ 53.
>
> Petitioner Semala does not assert that she was unaware of the potential sentence she faced or that the sentence she did receive is in excess of what Ohio law dictated at the time of the original sentence or re-sentence.

14

Semala v. Duffey, No. 1:09-CV-190, 2009 WL 2515629, at *5-*6  (N.D. Ohio Aug. 20, 2009) (discussing State v. Elswick, No. 2006-L-075, 2006 WL 3833868 (Ohio Ct. App. Dec. 29, 2006)).  The same is true of Perry and his sentence.

Perry was sentenced on his convictions for a total of thirteen years imprisonment.  (Doc. 12, RX 37.)  He was sentenced to eight years on Count One (violation of Ohio Rev. Code § 2911.02(A)(2)&(b), Robbery, second degree felony); five years on Count Two (violation of Ohio Rev. Code § 2911.02(A)(3)&(B), Robbery, third degree felony); and, five years on Count Three (violation of Ohio Rev. Code § 2911.02(A)(3)&(B), Robbery, third degree felony).  The sentence on Count Two was to run consecutive to that of Count One, but Count Three was to run concurrent with the first two, and the sentence for Count Four (violation of Ohio Rev. Code § 2913.02(A)(1)& (B)(3) theft of elderly person, fifth degree felony) was to merge with Count Three.  (Doc. 12, RX 37, at 3.)

Under the Ohio Revised Code at that time, the basic prison term for a second degree felony was from two to eight years.  Ohio Rev. Code § 2929.14(A)(2).  The basic prison term for a third degree felony was from one to five years.  Ohio Rev. Code § 2929.14(A)(3).  The basic prison term for a fifth degree felony was from six to twelve months.  Ohio Rev. Code § 2929.14(A)(5).  Under the four counts of which Perry was convicted, then, he could have received a maximum sentence of nineteen (19) years imprisonment.  Perry received a term of thirteen years.  (Doc. 12, RX 37.)  Thus, his sentence did not exceed the maximum permitted under the Ohio Revised Code.

15

Furthermore, this court has addressed the similar arguments challenging Foster on more than one occasion.  See, e.g., Allen v. Hudson, No. 1:08CV1825, 2009 WL 5178315, at *5-*6  (N.D. Ohio Dec. 29, 2009); Torres v. Beightler, No. 1:09CV191, 2009 WL 2705880, at *4 (N.D. Ohio Aug. 27, 2009); Schaub v. Brunsman, No. 1:08CV2522, 2009 WL 2143746, at *5 (N.D. Ohio July 16, 2009) (citing cases); Woody v. Welch, No. 3:08CV2534, 2009 WL 1440828, at *8-*9 (N.D. Ohio May 20, 2009) (noting that Miller v. Florida, 482 U.S. 423 (1987), involved retroactive application of legislative enactment).  See generally State v. Elmore, 122 Ohio St.3d 472, 912 N.E.2d 582 (2009), cert. denied, 130 S.Ct. 1025 (2009) (finding resentencing pursuant to Foster does not violate Sixth Amendment right to jury trial, or Ex Post Facto or Due Process Clauses of U.S. Constitution).

An ex post facto law "changes the punishment or inflicts a greater punishment than the law annexed to the crime when it was committed."  Black's Law Dictionary (6th ed. 1990) 580.  The United States Constitution prohibits a state from passing any ex post facto law.  U.S. Const. art. I, § 10, cl. 1.  To fall within the prohibition of the Ex Post Facto Clause, a law must 1) apply to events occurring before its enactment, and 2) disadvantage the offender.  United States v. Page, 131 F.3d 1173, 1175 (6th Cir. 1997), cert. denied, 525 U.S. 828 (1998).  The change in the law must alter the definition of criminal conduct or increase the penalty by which a crime is punishable.  Id. (citing California Dep't of Corrections v. Morales, 514 U.S. 499, 506 n.3 (1995)).  The critical question is "whether the law changes the legal consequences of acts completed before its effective date."  United

16

States v. Reese, 71 F.3d 582, 591 (6th Cir. 1995), cert. denied, 518 U.S. 1007 (1996) (quoting Weaver v. Graham, 450 U.S. 24, 31 (1981)).

Ohio courts have uniformly rejected ex post facto challenges to the Foster decision. See, e.g., Elmore, 122 Ohio St.3d at 476-477, 912 N.E.2d at 587-588; State v. Sharp, No. 89295, 2007 WL 4200755, at *2 (Ohio Ct. App. Nov. 29, 2007); State v. Green, No. 2005-A-0069, 2006 WL 3703204, at *3-*4 (Ohio Ct. App. Dec. 15, 2006); State v. McGhee, No. 17-06-05, 2006 WL 2796275, at *7 (Ohio Ct. App. Oct. 2, 2006). See generally United States v. Barton, 455 F.3d 649, 657 (6th Cir.), cert. denied, 549 U.S. 1087 (2006) (Booker does not violate ex post facto).

The Ohio Supreme Court in Elmore held that resentencing pursuant to Foster does not violate the Ex Post Facto or Due Process Clauses of the U.S. Constitution. Elmore, 122 Ohio St.3d at 473, 912 N.E.2d at 584 (syllabus). As to the ex post facto argument, the court found that Elmore's challenge failed because he faced no greater penalty on resentencing than he had at his original sentencing, thus there had been no increase in the potential punishment he faced. Id. at 475, 477, 912 N.E.2d at 586, 588. The court distinguished Miller v. Florida, 482 U.S. 423 (1987), because in that case the Florida legislature had increased the presumptive prison range. Id. at 477, 912 N.E.2d at 588. See also Woody, 2009 WL 1440828, at *8-*9 (Miller involved retroactive application of legislative enactment). In the case before it, the court noted that the statutory penalties for the crimes in Elmore remained the same both before and after Foster. Such is the case here as well.

17

Perry has failed to demonstrate that the state court decisions concerning his sentencing were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## V.  SUMMARY

The petition for a writ of habeas corpus should be denied.

The first ground of the petition has been procedurally defaulted.  As to the second ground, Perry has failed to demonstrate that the state court decisions concerning his ex post facto and due process claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be DENIED.


Dated:   Dec. 6, 2010            /s/ Kenneth S. McHargh
                                 Kenneth S. McHargh
                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's

order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).